**Charles SEYMOUR and Rose Seymour, Plaintiffs,**

v.

**GLORIA JEAN'S COFFEE BEAN FRANCHISING CORP., an Illinois corporation, Defendant.**

**No. CIVIL 4–89–739.**

United States District Court, D. Minnesota, Fourth Division.

March 14, 1990.

J. Michael Dady, Joseph A. Thomson, Lindquist & Vennum, Minneapolis, Minn., for plaintiffs.

Jeffrey S. Keyes, Briggs & Morgan, Minneapolis, Minn., Marc P. Seidler, John F. Verhey, Rudnick & Wolfe, Chicago, Ill., for defendant.

**MEMORANDUM AND ORDER**

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion to stay proceedings pending arbitration. The motion will be granted.

FACTS

Defendant Gloria Jean's Franchise Inc. (Gloria Jean's) is an Illinois corporation headquartered in Arlington Heights, Illinois engaged in the business of operating and franchising retail gourmet coffee and tea stores throughout the United States. Plaintiffs Charles Seymour and Rose Seymour are Minnesota residents who entered into franchise agreements with Gloria Jean's to open three Gloria Jean's stores in Minnesota, one in Southdale Mall, Edina; a second in City Center Mall, Minneapolis; and a third in Gaviidae Common in Minneapolis.[1] Plaintiffs seek either a recision of these agreements or damages pursuant to the Minnesota Franchise Act, Minn.Stat. § 80C *et seq.*, as well as for fraud and for material breaches of the agreements.

The agreements signed by the parties, encompassing an Area Development Agreement and individual franchise agreements, contain the following identically worded arbitration provisions:

> Except insofar as the FRANCHISOR elects to enforce this Agreement by judicial process, injunction or specific performance as hereinabove provided, all disputes and claims relating to any provision hereof or any other agreements between the FRANCHISOR and the FRANCHISEE (except an action for possession under any lease or sublease for the premises), any specification, standard or operating procedure or any other obligation of the FRANCHISEE prescribed by the FRANCHISOR, or any obligation of the FRANCHISOR, or the alleged breach thereof, the validity of this Agreement or any other agreements between the FRANCHISOR and the FRANCHISEE (except an action for possession under any lease or sublease for the premises) or any provisions thereof

---

1. The third site was originally intended to be at Rosedale Mall in Roseville, but the parties subsequently substituted the Gaviidae Common site.

(including without limitation any claim that this Agreement, any provision thereof, any specification, standard or operating procedure or any other obligation of the FRANCHISEE or the FRANCHISOR, is illegal or otherwise unenforceable or voidable under any law, ordinance or ruling), shall be settled by submission for arbitration at the Chicago, Illinois office of the American Arbitration Association, under the United States Arbitration Act (9 U.S.C. Section 1, et seq.), if applicable, and the then current Rules of the American Arbitration Association (relating to the arbitration of disputes arising under franchise and license agreements, if any, otherwise the general rules of commercial arbitration), provided that the arbitrator shall have the right to award, or include in his award any relief he deems proper, including, the specific performance of this Agreement (unless he determines that performance is impossible), money damages and injunctive relief.... This provisions [sic] shall continue in full force and effect subsequent to and notwithstanding expiration or termination of this Agreement. If an arbitration is filed during the term of the FRANCHISE, during the pendency of such arbitration proceeding hereunder, the FRANCHISEE and the FRANCHISOR shall fully perform this Agreement.

*See, e.g.,* Affidavit of Joseph A. Thompson, Exh. B (Gaviidae Common Franchise Agreement). Defendant moves to stay these proceedings pursuant to this provision. Plaintiffs contend that this provision was modified by the parties by adding a rider which provided as follows:

2. Paragraph 18G of the franchise agreement [pertaining to governing law] shall be modified to include the following language:

"This section shall not in any way abrogate or reduce any rights of the franchisee as provided for in Minnesota Statutes 1984, Chapter 80C, including the right to submit matters to the jurisdiction of the courts of Minnesota."

*Id.* Plaintiffs contend that this modification requires plaintiffs' consent before the dispute between the parties may be submitted to arbitration, a consent which plaintiffs withhold. Defendant responds that (1) neither the rider nor the statute or regulations requiring its inclusion in the franchise agreement literally preclude arbitration of this matter and (2) if they do, such a requirement is preempted by the Federal Arbitration Act, 9 U.S.C. § 2 (FAA).

DISCUSSION

Defendant's first argument is that the rider does not by its terms permit plaintiffs to avoid arbitration. Defendant argues that the rider did not grant plaintiff a substantive right to litigate, but only preserved any rights it already possessed under Chapter 80C. The rider amended paragraph 18.G of the franchise agreement, concerning governing law, by adding the following language:

This section shall not in any way abrogate or reduce any rights of the franchisee as provided for in Minnesota Statutes 1984, Chapter 80C, including the right to submit matters to the jurisdiction of the courts of Minnesota.

Defendant argues that nothing in the Minnesota Franchise Act specifically provides for the right to a judicial forum. Section 80C.17 provides:

A person who violates any provisions of [the Act] or any rule or order thereunder shall be liable to the franchisee or subfranchisor who may sue for damages caused thereby, for rescission, or other relief as the court may deem appropriate.

Section 80C.21 of the Act, as recently amended, provides:

Any condition, stipulation or provision purporting to bind any person who at the time of acquiring a franchise is a resident of this state, or, in the case of a partnership or corporation, organized or incorporated under the laws of this state, or purporting to bind a person acquiring any franchise to be operated in this state to waive compliance or which has the effect of waiving compliance with any provisions of sections 80C.01 to 80C.22 or any rule or order thereunder is void.

According to the Seymours, section 80C.17 creates a right to a judicial forum and, under 80C.21, a provision purporting to limit that right, such as a clause providing for arbitration, is void and unenforceable. Defendant responds that section 80C.17 is merely a remedies clause and that this may not be read as evidence of legislative intent to create a right to a judicial forum that could not be waived by an arbitration agreement. The Seymours also cite Rule 2860.4400(J), promulgated pursuant to the Minnesota Franchise Act, which provides:

> All franchise contracts or agreements and any other device or practice of a franchisor, shall conform to the following provisions. It shall be unfair and inequitable for any person to:
>
> . . . .
>
> (J) Require a franchisee to waive his rights to a trial or to consent to liquidated damages, termination penalties, or judgment notes; provided, that this part shall not bar a *voluntary* arbitration of any matter if the proceeding is conducted by an independent tribunal of the American Arbitration Association.

(Emphasis added.) The Seymours contend that subsection (J) makes it an inequitable practice to require a franchisee to sign a predispute binding arbitration agreement and that the only permissible franchise dispute arbitration agreements are those made "voluntarily," *i.e.*, not made as a condition of the franchise agreement itself. Defendant contends that the term "voluntary" means that arbitration agreements are enforceable as long as they are not coerced or signed under duress.

 The Court finds the former interpretation more plausible. Defendant's interpretation of the "voluntary" language would essentially envelop the protection offered in the first clause of subsection (J) which seeks to protect franchisees from being required to waive their rights to a trial as a condition of contracting. This Court has in the past noted the "remedial and protective purposes" of the Franchise Act. *Culligan International v. Culligan Water Conditioning*, 563 F.Supp. 1265, 1270 (D.Minn.1983). It is unlikely that the Commissioner of Commerce would deem it necessary to issue regulations which merely protect franchisees from contracts made "under duress" or which are "coerced," protections long available as defenses to any contract. The reference to "voluntary arbitration" serves only to except from the general prohibition voluntary agreements to arbitrate formed *after* a dispute has arisen under a franchise agreement. The Court concludes that subsection (J) is intended to prohibit pre-dispute agreements to arbitrate. The Court therefore finds that the rider attached to the franchise agreement specifically provides for the application of the Minnesota Franchise Act and accords plaintiffs the right to submit their dispute to a judicial forum.

Defendant argues, however, that if Minnesota law does indeed provide such a right, it does so in contravention of section 2 of the Federal Arbitration Act and is therefore preempted.

 The Federal Arbitration Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA is based upon congressional power to regulate interstate commerce. *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 405, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). The FAA creates a body of federal substantive law applicable in both state and federal courts. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). The FAA was intended to address the traditional hostility of courts at common law toward arbitration, as well as the failure of state arbitra-

tion statutes to mandate enforcement of arbitration agreements. *Southland Corporation v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 860, 79 L.Ed.2d 1 (1984).

In *Southland,* the Supreme Court considered whether a California law precluding enforcement of pre-dispute arbitration agreements in franchise contracts conflicted with section 2 of the FAA. Plaintiffs, a class of franchisees, brought suit against Southland, owner and franchisor of Seven–Eleven convenience stores, alleging various claims of fraud, breach of contract, breach of fiduciary duty and violation of various provisions of the California Franchise Investment Law, Cal.Corp.Code Ann. § 31000, *et seq.* The defendants moved to compel arbitration of the claims pursuant to an arbitration provision in the franchise agreements purporting to cover any controversy or claim arising out of or relating to those agreements or the breach thereof. The trial court granted the motion to compel arbitration of all claims except those based on the franchise investment law. The California Court of Appeals reversed as to the statutory claims but the California Supreme Court reversed, ruling that the franchise law required judicial consideration of all claims brought under that statute.[2]

The United States Supreme Court reversed, finding that the California Franchise Investment Law, as interpreted by the California Supreme Court to preclude enforcement of pre-dispute agreements to arbitrate, violated section 2 of the FAA. *Southland,* 104 S.Ct. at 858. Noting the broad purpose of the FAA to reach both state and federal impediments to arbitration, the Court held:

> In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.

*Id.* at 861. The Court rejected the argument that the California bar to enforcement of franchise arbitration agreements

did not fall within the exception of section 2 for "such grounds as exist at law or in equity for the revocation of any contract." *Id.* at 861 n. 11. The Court found that the California bar was not a ground that exists at law or in equity for the revocation of "any" contract, but rather was specific to franchise agreements. *Id.* The Court noted, however, that other defenses applicable to "any contract" were available in arbitration proceedings to avoid enforcement of an arbitration agreement. *Id. Cf. Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. at 1805–06 (claim of fraud in the inducement of a contract is for arbitrators, not for courts).

Defendant relies on *Southland* in arguing that the Minnesota Franchise Act, to the extent that it requires judicial consideration of Franchise Act claims notwithstanding pre-dispute agreements to arbitrate, conflicts with section 2 of FAA. Plaintiffs respond that their right to reject defendant's attempts to arbitrate stem not from Minnesota law but from the franchise agreement itself. Plaintiffs rely on *Volt Information Sciences v. Board of Trustees,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) for the proposition that where a contract specifies that the law of a particular state will govern the contract, and that states' laws contain rules limiting enforcement of arbitration agreements, such a provision does not violate section 2 of the FAA.

In *Volt,* plaintiff brought suit for breach of a construction contract, and the contractor moved to compel arbitration of the dispute pursuant to a clause in the agreement providing that the parties would arbitrate all disputes "arising out of or relating to this contract or the breach thereof." *Volt,* 109 S.Ct. at 1251. The contract also contained a choice of law clause providing that "the contract shall be governed by the law of the place where the project is located," *i.e.,* California. *Id.* California Civil Procedure Code Ann. § 1281.2(c) provides that a court may stay arbitration pending resolution of related litigation "where there is a

---

**2.** California Corporate Code Ann. § 31512 provides:

> Any condition, stipulation or provision purporting to bind any person acquiring any

franchise to waive compliance with any provision of this law or any rule or order hereunder is void.

possibility of conflicting rulings on a common issue of law or fact."[3] *See Volt*, 109 S.Ct. at 1251 n. 3. The Superior Court denied the motion to compel arbitration and the California Court of Appeals affirmed finding that by specifying that their contract would be governed by the law of California, the parties had incorporated the California rules of arbitration into their arbitration agreement. *Board of Trustees of Leland Stanford Junior University v. Volt Information Sciences, Inc.*, 195 Cal. App.3d 349, 240 Cal.Rptr. 558, 559–60 (1987).[4]

The Supreme Court affirmed, finding that section 2 of the FAA was inapplicable because the parties themselves had agreed to the California limitations on arbitration by including the choice of law provision. Volt argued that the court of appeals' construction of the choice of law clause violated the doctrine that questions of arbitrability must be addressed with a "healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues ... be resolved in favor of arbitration." *Id.* 109 S.Ct. at 1253, *quoting Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941–42. The Court held, however, that this principle was not violated:

> There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to insure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice of law clause to make applicable state rules governing the conduct of arbitration— rules which are manifestly designed to encourage resort to the arbitral process—simply does not offend the rule of liberal construction set forth in *Moses Cone*, nor does it offend any other policy embodied in the FAA.[5]

*Id.* 109 S.Ct. at 1254.

The Court also discussed whether sections 3 and 4 of the FAA, which authorize a court to compel arbitration and stay proceedings pending arbitration, preempt the California law authorizing the court to do the reverse, *i.e.*, stay arbitration pending litigation. The Court found that the FAA contained no express pre-emption provision, nor did it reflect congressional intent to occupy the entire field of arbitration. *Id.* at 1254. The Court also found that application of the California provision would not "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA. *Id.* at 1255, *quoting Heins v. Davidovitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). The Court concluded that the purpose of the FAA was "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," *id.* 109 S.Ct. at 1255, and not to require arbitration "when [parties] have not agreed to do so." Neither does the FAA, according to the Court, prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. *Id.* The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Id.* The Court concluded:

> Arbitration under the act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, *see Mitsubishi [Motors Corp. v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) ], so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if

---

**3.** The statute also authorized the court to "refuse to enforce the arbitration agreement." *Id.* 109 S.Ct. at 1251 n. 3.

**4.** The California Supreme Court denied Volt's petition for discretionary review.

**5.** The Court found that the California Arbitration Rules "generally fostered the federal policy favoring arbitration." *Id.* at n. 5.

the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms ... we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA. *Id.* 109 S.Ct. at 1255–56. Plaintiffs contend that their agreement on its face gave them the right to submit their claims to a judicial forum, and that *Volt* indicates that the parties' choice of law should be respected.

■ Plaintiffs' use of the term "choice of law" in this context, however, is somewhat misleading. As defendant notes, the Minnesota "choice of law" rider was not the product of free negotiation between Gloria Jean's and the Seymours but was included at the instruction of the Minnesota Department of Commerce in a letter to Gloria Jean's in October of 1986 specifying various "deficiencies" in Gloria Jean's application to register its franchise in Minnesota. Defendant's Reply Memorandum Exh. B. The Court finds that this fact takes the agreement outside of the *Volt* decision. *Volt* was clearly aimed at protecting true choice of law provisions, wherein the parties voluntarily choose to have their agreement governed by the law of a state which precludes arbitration. Such is clearly not the case here. Minnesota law apparently seeks to preclude enforceability of pre-dispute agreements to arbitrate. Moreover, the Department of Commerce, at least in this case, required the franchisor to include a provision in the franchise agreement specifying the applicability of Minnesota law. The Court finds that both the law itself, and the Department of Commerce's requirement that the agreement specify the applicability of the Minnesota Franchise Act, is inconsistent with section 2 of the Arbitration Act, as interpreted in *Southland* and *Moses Cone.* In *Volt*, the Court expressly noted that the state rules incorporated by the choice of law provision were rules "which are manifestly designed to encourage resort to the arbitral process," *Volt*, 109 S.Ct. at 1253, and further noted that the California arbitration rules "generally foster the federal

policy favoring arbitration." In contrast, Minnesota law and policy clearly appear to undermine this policy.

Defendant finds support in *Securities Industry Ass'n v. Connolly,* 883 F.2d 1114 (1st Cir.1989), *petition for cert. pending,* and *Webb v. R. Rowland & Co.,* 800 F.2d 803 (8th Cir.1986) for the proposition that Minnesota cannot encroach on the FAA by placing limitations on the manner in which arbitration provisions are negotiated. In *Connolly,* a trade association of security broker-dealers in Massachusetts challenged state regulations barring firms from requiring individuals to enter pre-dispute arbitration agreements as a "non-negotiable condition precedent to account relationships," requiring that this prohibition be brought "conspicuously" to the attention of prospective customers, and demanding full written disclosure of the legal effect of a predispute arbitration contract or clause. *Id.* at 1117, *citing* Mass.Reg.Code Title 950, §§ 12.204(G)(1)(a)-(c). Applying the Supreme Court precedents discussed above, the court held that the FAA preempted the regulations because the limitations demonstrated animosity toward arbitrations specifically, and were not addressed to contracts of adhesion generally. *Id.* at 1121. The court distinguished *Volt* by noting that the California regulation in *Volt* "filled in an interstice in the FAA ... whereas the regulations here at issue plainly undermine the presumption of validity that the [FAA] meant to confer on arbitration contracts generally." *Id.* at 1119 n. 3.

In *Webb,* a case decided prior to *Volt,* the Eighth Circuit refused to give effect to a choice of law provision in an arbitration agreement where the law of the state chosen would render the agreement unenforceable if found to be a contract of adhesion, or if it failed to contain a notice, in ten-point capital letters, that the contract contained a binding arbitration provision. Citing *Moses Cone* and *Southland,* the court held that the arbitration agreement must be interpreted solely by reference to federal law, which requires that arbitration agreements be liberally construed in favor of arbitration:

It is clear, contrary to the Webbs' assertions, that federal law preempts state law with respect to the interpretation and construction of arbitration agreements falling within the scope of these requirements ... therefore we reject the Webbs' arguments that the choice of law provision in the customer's agreements mandates that the arbitration clause be construed according to Missouri law.

*Webb,* 800 F.2d at 806–07.

The court cited with approval an excerpt from a Third Circuit opinion containing the following hypothetical illustration:

> For example, consider the case where a contract containing an arbitration clause provides that the law of state X shall govern the agreement. Assume that the law of state X will not enforce, or gives very limited effect to arbitration clauses, such that under X law the dispute would not be submitted to arbitration. If one party sues on the contract in federal court and the contract involves "commerce," the federal district court, in deciding a motion to stay the proceedings and compel arbitration under 9 U.S.C. § 3, would look to federal law in determining the scope of the arbitration clause.

*Id.* at 806–07 n. 4, *citing Becker Auto-radio U.S.A. Inc. v. Becker Autoradiowerk GMBH,* 585 F.2d 39, 43 n. 8 (3d Cir.1978). The court then held "in passing" that the agreements were not contracts of adhesion, *citing Surman v. Merrill Lynch Pierce Fenner & Smith,* 733 F.2d 59, 61 n. 2 (8th Cir.1984). *Id.* at 807.

*Webb* is not inconsistent with *Volt,* in that like here, the state regulations did more than regulate the manner in which arbitration was to be conducted, but rather limited the extent to which parties could agree to submit their claims to arbitration. The Court finds that pursuant to the above cases, enforcement of the "choice of law" provision of the franchise agreement is barred by section 2 of the Federal Arbitration Act.

Plaintiff also argues that the arbitration agreement itself lacks mutuality, in that the franchisee must arbitrate all claims while the franchisor may elect to submit certain claims to a court. Plaintiff relies on *Hull v. Norcom Inc.,* 750 F.2d 1547 (11th Cir.1985) in which the United States Court of Appeals for the Eleventh Circuit held that "the consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate at least some specified class of claims." *Id.* at 1550. Defendant responds that *Hull* is inapplicable in that the arbitration agreement did require defendant to submit at least some claims to arbitration. Defendant also argues that under Illinois law,[6] the principle of mutuality of contract does not require complete reciprocity as to each and every contractual right and obligation, but rather that each party must furnish some benefit or suffer some detriment for the contract to be supported by consideration. *See Piehl v. Norwegian Old Peoples Home Society of Chicago,* 127 Ill.App.3d 593, 83 Ill.Dec. 98, 99, 469 N.E.2d 705, 706 (1984) ("[a] contract does not lack mutuality merely because its obligations appear unequal or because every obligation or right is not met by an equivalent counter obligation or right in the other party.... The mutuality requirement is satisfied if each party has made a promise to the other and is therefore an obligor and under a duty to the other contracting party.").

Here, unlike in *Hull,* defendant did not reserve unto itself the right to litigate all potential claims it may have against plaintiffs. The agreement grants franchisor the right to seek injunctive relief and specific performance regarding the Seymours' use of Gloria Jean's proprietary names and marks, the obligations of the Seymours on termination of the agreement or assignment of the agreement, or to prohibit any act or omission of the Seymours constituting a violation of an applicable law, ordinance or regulation or other act which might impair the goodwill associated

**6.** Except as provided in the rider, the franchise agreement specified that the agreement would be subject to interpretation in accordance with the laws of the state of Illinois. Franchise Agreement ¶ 18G.

996

with the proprietary names and marks. However, all claims by Gloria Jean's for money damages or those claims relating to any subject matter other than the enumerated ones are subject to the arbitration clause. Thus it is clear that at least some claims of Gloria Jean's are governed by the arbitration agreement.

While the precise provisions of the agreement concerning arbitration and litigation do not confer identical rights on the parties, the agreement as a whole does not lack consideration, nor does the agreement in its entirety lack mutuality. The Court finds nothing in the mutuality doctrine which should bar enforcement of the arbitration agreement.

Accordingly, based upon the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that defendant's motion to stay proceedings pending arbitration is granted.