Philip W. CLAYTON, Plaintiff,

v.

**WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY, et al.,**
Defendants.

Civil Action No. 97–A–942–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 28, 1997.

Samuel A. Cherry, J. Farrest Taylor, Dothan, AL, for Plaintiff.

C.C. Tobert, Jr., Peter S. Fruin, Montgomery, AL, W. Percy Badham, Birmingham, AL, for Defendants.

### MEMORANDUM OPINION

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Dismiss/Stay and Compel Alternative Dispute Resolution Procedure, filed by Woodmen of the World Life Insurance Society ("Woodmen").

The Plaintiff, Philip W. Clayton ("Clayton" ') originally filed a Complaint in this case in the Circuit Court of Barbour County, Alabama, bringing four Counts against Woodmen and John L. Howard ("Howard") (collectively "the Defendants"). Woodmen filed a Notice of Removal on June 18, 1997, asserting that diversity jurisdiction exists because the resident defendant, Howard, was fraudulently joined.

Woodmen filed a Motion to Dismiss/Stay and Compel Alternative Dispute Resolution Procedure, arguing that the court should dismiss this action and should compel Clayton

to arbitrate his dispute with Woodmen. Clayton filed an Opposition to the Motion to Dismiss or Compel Arbitration on July 17, 1997.

On August 4, 1997, Howard filed a Motion to Dismiss the Complaint filed against him. Following a telephone conference with the parties, the court granted the Motion to Dismiss, filed by John L. Howard, on August 7, 1997. Also following the telephone conference with the parties, the court gave Clayton until September 22, 1997, to conduct discovery to supplement his response to the Motion to Dismiss/Stay and Compel Alternative Dispute Resolution. Clayton filed an Opposition to the Defendant's Motion, and Woodmen Replied to the Plaintiff's Opposition on September 22, 1997.

For reasons to be discussed, the Woodmen's Motion is due to be GRANTED.

## II. *FACTS*

Clayton alleges that he was approached about purchasing life insurance with Woodmen and that, after speaking with an agent of Woodmen, he agreed to purchase a policy. Woodmen is incorporated under the laws of Nebraska, is not for profit, has a representative form of government, and is governed by the constitution and laws of the society.

After Clayton purchased his policy, but before he filed the instant suit, the constitution and laws of Woodmen were amended to require an alternate dispute resolution procedure which includes an arbitration requirement. All Woodmen members were given notice of the constitutional amendment instituting the Problem Resolution Procedure. Woodmen alleges that Clayton is bound by the alternative dispute resolution provision, so that Clayton is required to arbitrate his claims regarding the life insurance policy.

## III. *DISCUSSION*

Woodmen points to a provision contained in the constitution of the society which requires that all claims made by members must be submitted to an alternative dispute resolution procedure which includes arbitration. Woodmen argues that this arbitration provision is enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. ("FAA"). In response, Clayton argues that the FAA does not apply to the arbitration provision at

issue, and, as a pre-dispute arbitration provision, it may not be enforced under Alabama law. *See* Ala.Code § 8–1–40 (1993).

Section 2 of the FAA provides, in part, that an arbitration clause contained in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The term "commerce," as used in the FAA, means interstate commerce. *See id.* § 1.

■ Clayton contends that the FAA does not apply to the arbitration provision at issue because (1) the arbitration provision is not contained within the contract at issue, and (2) the contract is not a contract which evidences a transaction involving commerce.

Clayton has argued that there is no arbitration provision in the contract entered into by Clayton and Woodmen. Clayton acknowledges, however, that there is an arbitration provision within the constitution and laws of Woodmen, as amended. Clayton also acknowledges that a provision of the contract at issue states that the Articles of Incorporation and Constitution and Laws are incorporated by reference. *See* Certificate of Benefits, page 6. However, Clayton has argued that the provision seeking to incorporate by reference the constitution and laws is expressly prohibited under Alabama law. *See* Ala.Code § 27–14–14 (1986) (stating that no portion of the charter, bylaws, or other constituent document of an insurer shall become part of the contract unless set forth in full in the policy).

Although Clayton has advanced the argument that the constitution and laws cannot be incorporated by reference into the agreement, Clayton also apparently acknowledges that, under Alabama law, a fraternal benefit society may incorporate provisions of its constitution and bylaws into the agreement with its members. *See* Ala.Code § 27–34–29 (1986). Under the Alabama Code, the agreement between a fraternal benefit society and its members consists of a certificate specifying the amount of benefits provided to its members, together with any riders or endorsements, the charter or articles of incorporation, the constitution and laws of the

society, the application for membership, the declaration of insurability, and all amendments to each. *Id.*

After conducting discovery, Clayton has conceded that Woodmen is a fraternal benefit society. *See* Opposition to the Defendant's Motion, page 1. In addition, Woodmen has provided to the court a Certificate of Authority authorizing Woodmen to act as a Fraternal Benefit Society in Alabama.

Another district court in this circuit has recently addressed, under very similar facts, the question of whether the arbitration provision in the constitution and laws of Woodmen are binding on its members. *See Bevis v. Woodmen of the World Life Ins. Society,* CV–97–B–1 186–NW, Slip. Op. at pages 2–3 (N.D.Ala. Sept. 23, 1997). The court held that, because Woodmen is a fraternal benefit society, Woodmen's constitution and any amendments thereto become part of the benefit certificates and, therefore, the arbitration provision is binding on its members. *Id.* at 2–3.

The court agrees with the *Bevis* court's reading of Alabama contract law that amendments to a fraternal benefit society's constitution and laws become a part of the agreement between the society and its members. Therefore, because Woodmen is a fraternal benefit society, the amendments to the constitution and laws, including the arbitration provision, are incorporated into the contract between Clayton and Woodmen.

■ Clayton also argues that the arbitration provision may not be enforced, as it is unenforceable under Alabama law, and as the contract does not evidence a transaction in interstate commerce. Clayton apparently intends to make the argument that Woodmen is not engaged in interstate commerce.

In *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the Supreme Court established the framework for determining whether a contract involves interstate commerce for purposes of the FAA. The Court found that, in enacting the FAA, Congress intended to exercise its commerce power to the fill extent of the Commerce Clause. *Id.* at 274, 115 S.Ct. at 839–40. Furthermore, the Court held that the phrase, "a contract evidencing a transaction involving commerce," contained in 9 U.S.C. § 2, requires only "that the 'transaction' in fact 'involve' interstate commerce," and does not require that the parties "contemplate an interstate commerce connection." *Id.* at 281, 115 S.Ct. at 843.

In *Allied–Bruce,* an Alabama resident purchased a lifetime "Termite Protection Plan" ("the Plan") from a local office of Allied–Bruce Terminix Companies, a franchise of · Terminix International Company. *Id.* at 268, 115 S.Ct. at 836–37. Although not contested by the parties, the Court found that the Plan involved interstate commerce because of "the multistate nature of Terminix and Allied–Bruce" and because "the termite-treating and house-repairing material used by Allied–Bruce in its ... efforts to carry out the terms of the Plan [ ] came from outside Alabama." *Id.* at 282, 115 S.Ct. at 843.

Clayton has not cited the court to any cases in support of his statement that the contract at issue is not one which evidences a transaction involving commerce. Instead, Clayton has merely stated that Woodmen does not claim to be engaged in commerce, but is instead is a fraternal benefit society.

In response to Clayton's contention that the contract at issue does not evidence a transaction in interstate commerce, Woodmen cites to a decision of the United States Supreme Court in which the court addressed whether Congress had exceeded its authority under the Commerce Clause by regulating the unfair labor practices of a fraternal benefit society. *See Polish National Alliance, et al. v. National Labor Relations Board,* 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509 (1944). The Court reasoned that the fraternal benefit society, which provided death, disability, and accident benefits to its members, had engaged in a web of money-making transactions across many state lines, so that labor practices at one business could burden and disrupt commerce across state lines. *Id.* at 645, 64 S.Ct. at 1197. The court looked at factors such as the assets of the fraternal benefit society, that lodges existed outside of the state of the home office, that the lodges were organized into councils which elected delegates to a national convention, that the actions of field agents were directed from the

home office, and that there were expenditures on advertising outside of the state of the home office. *Id.* at 644–45, 64 S.Ct. at 1197–98. While the case was concerned with an exercise of jurisdiction over the labor practices of a fraternal benefit society, it indicates that a fraternal benefit society can be engaged in interstate commerce based upon its activities throughout the United States. *Id.*

In this case, Woodmen is incorporated in Nebraska, but has been certified as a fraternal benefit society in Alabama. Woodmen states that it has lodges throughout the fifty states and the District of Columbia. The documents presented to the court indicate that the home office of the society is in Nebraska, but there are lodges outside of Nebraska, including in the State of Alabama. *See* Statement of Certificate Cost and Benefit Information. Woodmen has been certified as fraternal benefit society with a representative form of government. Woodmen also states that it spent over $50,000 on advertizing outside of the State of Nebraska.

■ Additionally, as the concurrence in *Polish National* pointed out, insurance business conducted across state lines by fraternal benefit societies can be subject to federal regulation as a regulation of interstate commerce. *Id.* at 653, 64 S.Ct. at 1201 (Black, J., concurring); *see also United States v. South–Eastern Underwriters Assoc.*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) (holding that insurers conducting business across state lines were in interstate commerce).[1] Therefore, the contract at issue in this case, as an insurance agreement between a fraternal benefit society and its member, is also

one which evidences a transaction in commerce. *See Hart v. Orion Ins. Co.*, 453 F.2d 1358 (10th Cir.1971) (FAA applies to an insurance contract); *Palozie v. State Farm Mutual Automobile Ins. Co.*, No. 96–0021–PHX–ROS, 1996 WL 814533 (D. Ariz. Dec 2, 1996) ("Insurance policies clearly involve interstate commerce and are subject to the [Federal Arbitration] Act").

Furthermore, the contract in this case indicates that Woodmen engaged in interstate commerce. Woodmen's home office is in Nebraska, but the policy at issue was sold by an agent of Woodmen in Alabama. The contract reveals that forms filled out by Clayton were received and recorded by the home office and were signed by the National Secretary. *See* Change of Beneficiary Request. Woodmen was also authorized to make withdrawals from Clayton's bank in Birmingham. *See* Pre–Authorized Collection Information.

The evidence of Woodmen's activities indicates that it engaged in interstate commerce in its insurance agreement with Clayton. *See Staples v. The Money Tree*, 936 F.Supp. 856 (M.D.Ala.1996) (holding that loan/insurance transaction between a person in Alabama and a Georgia corporation involved commerce within the meaning of the FAA based on activities relevant to the contract which occurred in Georgia and Alabama). The evidence also indicates that Woodmen is a fraternal benefit society, not unlike the fraternal benefit society in *Polish National Alliance*, which engages in interstate commerce through its activities. Therefore, in light of the precedent discussed, and in light of the evidence before the court, the court

---

1. The parties have not addressed precedent holding that an insurer which conducts business across state lines engages in interstate commerce. *See South–Eastern Underwriters Assoc.*, 322 U.S. at 546–47, 64 S.Ct. at 1169–71. After *South–Eastern Underwriters* was decided, Congress passed the McCarran–Ferguson Act to allow for state regulation of the business of insurance. 15 U.S.C. § 1012 (1997). However, the McCarran–Ferguson Act does not preclude application of the FAA to an arbitration provision within an insurance policy. *Miller v. National Fidelity Life Ins. Co.*, 588 F.2d 185 (5th Cir.1979) (holding that McCarran–Ferguson did not preclude application of the FAA where there was no showing that application of the FAA would invalidate, impair, or supercede any particular state

law which regulated the business of insurance); *see also Commonwealth Enterprises v. Liberty Mutual Ins. Co.*, 958 F.2d 376 (9th Cir.1992) (unpublished disposition) (FAA applies to insurance contracts and application is not precluded by McCarran–Ferguson). Here, the state law which prohibits enforceability of pre-dispute arbitration agreements is not confined to insurance contracts, but is included within the section of the Code that applies to all contracts. *See* Ala.Code § 8–1–40 (1993). Therefore, the FAA does not invalidate, impair, or supercede a state law which regulates the business of insurance. *See Hart*, 453 F.2d at 1360 (holding that state statutes do not regulate business of insurance where they are laws of general application pertaining to the method of handling contract disputes).

concludes that the contract at issue in this case is a contract which evidences a transaction in interstate commerce.

Because the agreement at issue incorporates an amendment which requires arbitration of disputes, and because the agreement is a contract which evidences a transaction in interstate commerce, this court finds that Clayton is bound by the arbitration provision of his agreement with Woodmen. Clayton must pursue his claims against Woodmen under the Problem Resolution Procedures set out in the society's Constitution and Laws, and not in court.

■ The parties have addressed the question of whether Clayton should be compelled to arbitrate his claims without differentiating between the claims. Where all of the issues raised in a complaint must be submitted to arbitration, courts have held that a dismissal of the action is appropriate, since retaining jurisdiction and staying the action does not serve judicial economy. *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992); *Boyd v. Homes of Legend, Inc.,* No. CV–97–T–142–E, 981 F.Supp. 1423 (M.D.Ala.1997). Therefore, rather than stay this action, the court will dismiss Clayton's complaint with prejudice.

### IV. *CONCLUSION*

For the reasons discussed, Woodmen's Motion to Dismiss is due to be GRANTED.