**WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY,**
Plaintiff,

v.

**John Anthony WHITE and Phyllis Mote White, Defendants.**

**Woodmen of the World Life Insurance Society, Plaintiff,**

v.

**Louis Grady Benson, Jr., Defendant.**

**Woodmen of the World Life Insurance Society, Plaintiff,**

v.

**Walter Davis Clayton, Defendant.**

**Civ. A. Nos. 98–A–113–N, 98–A–455–N and 98–4–487–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 8, 1999.

---

Peter S. Fruin, Montgomery, AL, W. Percy Badham, Birmingham, AL, for plaintiff.

Lynn W. Jinks, III, Union Springs, AL, for defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on motions filed in three different cases. Although the cases have not been consolidated, they all involve the same provision of Woodmen's constitution and by-laws. Therefore, the court will discuss all of the arguments raised in the various cases together in this one Memorandum Opinion.

This court previously granted Motions to Dismiss in these cases and the court's decision was appealed to the Eleventh Circuit.

The cases are before the court after being remanded by the Eleventh Circuit for consideration in light of its later decision in *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292 (11th Cir.1998). In accordance with *TranSouth Financial*, this court has previously entered Orders vacating the earlier orders on the Motions to Dismiss, and denying the Defendants' Motions to Dismiss. Now pending before the court are Petitions to Compel Arbitration filed by Woodmen in the three separate cases.

## II. *FEDERAL ARBITRATION ACT*

Pursuant to the Federal Arbitration Act, a written arbitration "provision in any ... contract evidencing a transaction involving commerce ... [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed." When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

## III. *DISCUSSION*

The arbitration provision in question, which was placed in Woodmen's constitution and by-laws, reads as follows:

Step 3: If step 2 [requiring mediation] does not result in a mutually satisfactory resolution, arbitration administered by and in accordance with the applicable arbitration rules of the American Arbitration Association (or another neutral organization mutually agreed upon). The arbitrator may award any and all damages or other relief allowed for the claim in dispute by applicable federal or state law, excluding attorneys fees unless otherwise required by applicable law. Unless (and to the extent) prohibited by applicable law with respect to the issue in dispute, the decision of the arbitrator shall be final and binding, subject only to the right to appeal such decision as provided in the arbitration rules and applicable law.

The Defendants in these cases have raised different arguments for why this court should not enforce the arbitration clause contained in the constitution and by-laws of Woodmen. These arguments are that (1) there is no agreement to arbitrate, (2) the arbitration agreement is unenforceable under Alabama law, (3) the arbitration clause is not found within a contract evidencing interstate commerce, (4) the contract is not subject to arbitration under McCarran–Ferguson, (5) the amendment to Woodmen's constitution violated the Defendants' right to a jury trial, and (6) Woodmen's petitions for arbitration violate federalism. The court will address each of the arguments made by a Defendant as if they had been raised by all Defendants. The Defendants first argue that there is no agreement to arbitrate because the Defendants received an insurance certificate which made no mention of arbitration. Woodmen responds that while the benefits certificates do not mention the arbitration agreement, the arbitration clause is found in Woodmen's constitution and laws and is a provision of the contract by incorporation. Woodmen argues that the provisions of the Alabama Code governing fraternal benefit societies, such as Woodmen, dictate that the arbitration provision is incorporated into the agreements between Woodmen and the Defendants.

Under the Alabama Code, a fraternal benefit society must issue a certificate specifying the amount of benefits provided to its members. *Ala.Code* § 27–34–29 (1986). This certificate, together with any riders or endorsements, the charter or articles of incorporation, the constitution and laws of the society, the application for membership, the declaration of insurability, and all amendments to each thereof shall constitute the agreement between the society and the member. *Id.* Woodmen amended its constitution and laws to include an arbitration clause.

■ This court, and other district courts in this circuit, as well as state courts, have previously addressed the issue of whether the arbitration clause in Woodmen's constitution and laws is a part of the contract between the society and its members. *See*

*Clayton v. Woodmen of the World Life Ins. Society,* 981 F.Supp. 1447 (M.D.Ala.1997); *Woodmen of the World Life Insurance Society v. Johnson,* 23 F.Supp.2d 1344 (S.D.Ala. 1998); *Bevis v. Woodmen of the World Life Ins. Society,* CV–97–B–1186–NW, Slip. Op. at pages 2–3 (N.D.Ala. Sept. 23, 1997) (Blackburn, J.); *See also* Order in *Holmes v. Woodmen of the World Life Insurance Society,* CV 97–528 (Ala.Cir.Ct. Morgan Co. March 18, 1998) (Haddock, J.). These cases have recognized that under the Alabama Code, amendments to the constitution and laws of a fraternal benefit society become part of the agreement between the society and the member, so that the arbitration clause adopted by Woodmen is included within the agreements between Woodmen and society members. *See Clayton,* 981 F.Supp. at 1449; *Bevis* at page 3. This court again concludes that the arbitration clause at issue is incorporated into the agreements between Woodmen and the Defendants so that the arbitration clause is part of the contract to which the society members agreed.

The Defendants have, however, cited this court to a recent decision of the Supreme Court of Alabama. *See Ex Parte Hopper,* 1999 WL 14690, —— So.2d ——, No. 1970259 (Ala. Jan. 15, 1999). The Hopper decision was a plurality opinion written by Justice Kennedy in which one justice concurred in the result, two justices concurred in part one of the opinion, two additional justices concurred in part two of the opinion, and the remaining three justices dissented. In part one of that opinion, the part of the opinion in which two justices concurred in the reasoning and one justice concurred in the result, Justice Kennedy stated that although "the certificate of insurance did incorporate future amendments to the governing laws of the Society, a provision of this kind is not enough to put the Hoppers on notice that by signing their application for insurance they were agreeing to mandatory, binding arbitration." *Id.* at ——, page *2. This part of the opinion also states that the agreement to allow the Society to make "certain unilateral changes to their insurance agreement" does not provide the clear and unmistakable evidence required to show that they voluntarily waived their constitutional rights to a judicial resolution. *Id.*

In part two of the opinion, the portion of the opinion concurred in by four justices with another concurring in the result, Justice Kennedy states that even assuming a valid arbitration agreement between Woodmen and the benefit society members, the agreement could not be used to compel the particular society members in that case to arbitrate because their complaint was filed before the arbitration procedure went into effect. *Id.* at ——, *4.

Woodmen strenuously argues that this court should not follow *Ex Parte Hopper.* Woodmen states that the part of the opinion stating that the arbitration agreement was not enforceable was not joined in by a majority of the justices, and that the only two justices who concurred in the reasoning in part one of the opinion have since retired. Woodmen also states that the part of the opinion which was joined by the majority does not apply in these cases because Walter Clayton filed his lawsuit on May 9, 1997, Louis Benson filed his lawsuit on July 28, 1997, and the Whites filed their lawsuit on January 14, 1998. The Alabama Supreme Court held that the amendment incorporating the arbitration agreement took effect on January 28, 1997. *Id.* Therefore, Woodmen argues, all of these cases, unlike the *Ex Parte Hopper* case,[1] were filed after the amendment became effective.

The court agrees that the portion of the *Ex Parte Hopper* opinion which finds the Woodmen arbitration agreement to be unenforceable is not binding as only three justices concurred in that portion of the opinion. While this court, sitting in diversity, is bound to apply the law of the State of Alabama in a manner in which it thinks the highest court would apply the law, the fact that a majority did not concur in part one, the departure from the court of two concurring justices, and the strong dissent, cast doubt on the viability of this part of the case. *Cf. Vargus v. Pitman Manufacturing Co.,* 675 F.2d 73, 75 (3rd Cir.1982) (stating that a shift in

---

1. The dissenting justices in *Ex Parte Hopper* found that the amendment went into effect on December 31, 1996. All of the cases involved here, however, were filed after either date, so the court need not address this issue.

analysis "indicates the danger of relying on plurality opinions as definitive statements of the law.")

■ Additionally, it appears that rather than applying general principles of contract law to the case before it, part one of the opinion applied a rule which it found to be applicable to arbitration agreements. Only "state laws that are applicable to contracts generally may be applied to arbitration agreements; a state law that singles out arbitration agreements for disfavored treatment is displaced by the FAA." *Roberson v. Money Tree of Alabama, Inc.*, 954 F.Supp. 1519, 1528 (M.D.Ala.1997). The plurality in *Ex Parte Hopper* stated, "[A]lthough the Hoppers' certificate of insurance did incorporate future amendments to the government laws of the Society …," which indicates to this court that the contract incorporated the laws by reference under normal operation of contract law. Accordingly, departing from the outcome dictated by operation of general principles of contract law required application of a rule particular to the arbitration context.[2] Under this court's reading of federal law, and of general state contract principles, the contract to which the Defendants agreed incorporated an enforceable arbitration agreement. As previously discussed, the amendment including the arbitration agreement was effective before the Defendants filed their complaints in the parallel state actions. Accordingly, the court concludes that the arbitration agreement was a part of the contracts into which the Defendants and Woodmen entered and is binding on the Defendants.

The Defendants have raised an additional argument for why the arbitration agreement is unenforceable under Alabama law. They state that the certificate issued to the Defendants by Woodmen contains a provision which states that the "terms of this certificate will be governed by the laws of the state where it is delivered." The Defendants argue that recent Supreme Court of Alabama decisions lead to the conclusion that the arbitration clause is unenforceable because it provides an exception for applicable law and

the applicable law is, by virtue of the choice-of-law clause, Alabama law. In support of this argument, the Defendants cite *Fidelity National Title Insurance v. Jericho Management, Inc.*, 722 So.2d 740 (Ala. 1998) ("*Fidelity II*") (per curiam) and *Fidelity National Title Insurance Co. v. Jericho Management, Inc.*, 1997 WL 564473 ("*Fidelity I*").

In *Fidelity* II, the court decided that the arbitration provision which was to apply "unless prohibited by applicable law" was enforceable in Alabama because the reference to "applicable law" meant either state or federal law. *Fidelity* II, at 743. The Defendants argue that in the instant case "the applicable law" does not refer to both state and federal law because the Woodmen certificate contains a choice-of-law provision which says that it is governed by the "laws of the state."

Woodmen argues in response that the holding in *Fidelity* II, that the phrase within the insurance contract stating "unless prohibited by applicable law" referred to both federal and state law, also applies here. Woodmen states that the parties intended either federal or state law to apply, where applicable, and that the choice of law clause does not alter that interpretation. Woodmen points out that the contract in *Fidelity* II had a provision which stated that an arbitration of a dispute involving the title insurance would be governed by "the law of the situs of the land," but that the Alabama Supreme Court determined that the parties did not intend for the Federal Arbitration Act not to apply.

■ In determining the intent of the parties in *Fidelity* II, the Supreme Court of Alabama made it clear that it was considering the entirety of the arbitration provision in determining what was meant by "applicable law." *Id.* at 743. The court refers to the drafters' references to state law in two sentences in the arbitration provision. *Id.* One reference to state law in the arbitration provision is the choice of law provision. Therefore, it appears that the court decided that

---

2. In addition, in deciding not to interpret the agreement consistently with general principles of contract law, the plurality opinion cited federal cases to support the idea that such incorporation

was insufficient. *Ex Parte Hopper*, at ——, 1999 WL 14690 at *2. This court is only bound by the Supreme Court of Alabama's determinations of state, not federal law.

the choice of law provision was not an indication that "applicable law" was solely the laws of Alabama. This court agrees with this reasoning and determines that a reference to "applicable law" in the Woodmen alternative dispute resolution provision also refers to both state and federal law, and is not limited by the choice of law clause in the benefit certificate, which refers only to the "terms of the certificate." Therefore, the additional phrase "applicable law" is not evidence of intent to undermine the parties' agreement to arbitrate disputes.

The Defendants also cite two United States Supreme Court decisions in support of their argument. In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), a client agreement stated that the entire agreement shall be governed by the laws of the State of New York, but that any controversy shall be settled by arbitration in accordance with the rules of the National Association of Securities Dealers. New York law did not allow arbitrators to award punitive damages, while the NASD rules did. The court harmonized the two provisions by reading them to state that substantive provisions of New York law apply, but not special rules limiting the authority of arbitrators. *Id.* at 1219. The Defendants argue that this case shows that the substantive law of Alabama, including the anti-arbitration provision of the Alabama Code, is to apply under Woodmen's agreement.

The Defendants also cite *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), in which a contract contained an arbitration clause, but also contained a provision which stated that the contract shall be governed by the law of the place where the project was located. The Court affirmed the appeals court interpretation that the choice-of-law provision meant that the parties intended state law rules of arbitration to apply. *Id.* at 476, 109 S.Ct. 1248.

Woodmen distinguishes these cases by stating that the state law in *Volt* was found to actually foster the policies behind the Federal Arbitration Act because it allowed for the arbitration of disputes. Woodmen states that *Mastrobuono* held that the choice of law provision did not limit the preemptive power of the Federal Arbitration Act, but that Alabama's anti-arbitration statute is much more contrary to the Federal Arbitration Act and its underlying policy than a state law which prohibited punitive damages.

The court agrees that *Volt* and *Mastrobuono* are distinguishable from the case at hand because the Alabama rule which the Defendants now seek to apply would render the arbitration agreement within the contract to which the parties agreed unenforceable, while the agreements in *Volt* and *Mastrobuono* dealt only with procedural issues and, even where the state law was enforced, the state law actually fostered arbitration. *See Volt*, 489 U.S. at 476, 109 S.Ct. 1248 (the state arbitration rules "generally foster the federal policy favoring arbitration.").

The Eighth Circuit has previously addressed an argument similar to the argument which the Defendants have made in this case. *See Webb v. R. Rowland & Co.*, 800 F.2d 803 (8th Cir.1986). In *Webb*, the agreement at issue stipulated that "all provisions of the contract, including the section on arbitration, were to be governed by state law." *Id.* at 804. The Eighth Circuit rejected the argument "that the choice of law provision in the Customer's Agreements mandates that the arbitration clause be construed according to Missouri law." *Id.* at 807. The court explained that the liberal federal policy favoring arbitration in contracts governed by the Arbitration Act dictates that federal law preempts state law with respect to the interpretation and construction of arbitration agreements falling within the scope of the FAA. *Id.* at 806–07 (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *see also In Matter an Arbitration Between National Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 1995 WL 571444, No. Civ. 5205(TPG) (S.D.N.Y. Sept. 28, 1995) ("where federal law applies under the reasoning of *Cone*, a contractual choice of law provision in favor of state law does not displace federal law on the issue of arbitrability."), *aff'd*, 88 F.3d 129 (2nd Cir.1996).

Although *Webb* predates *Volt* and *Mastrobuono*, *Webb* is not inconsistent with those decisions. At least one federal court has concluded that *"Webb* is not inconsistent with *Volt*, in that like here, the state regulations did more than regulate the manner in which arbitration was to be conducted, but rather limited the extent to which parties could agree to submit their claims to arbitration." *Seymour v. Gloria Jean's Coffee Bean Franchising Corp.*, 732 F.Supp. 988, 995 (D.Minn. 1990). In *Seymour*, the court held that enforcement of the choice of law provision was barred by section 2 of the Federal Arbitration Act. *Id.*

This court finds that *Mastrobuono* does not alter this result since it is significantly factually distinguishable. Additionally, while the Eleventh Circuit has applied *Mastrobuono* in the context of a punitive damages question, *see Davis v. Prudential Securities, Inc.*, 59 F.3d 1186 (11th Cir.1995), it has not indicated that *Mastrobuono* applies in a broader context than those facts. Accordingly, the court concludes that since *Volt* and *Mastrobuono* are distinguishable from this case, in which the state rule sought to be applied would render an arbitration agreement unenforceable and would run completely contrary to the strong policy in favor of arbitration expressed by Congress in the FAA, the choice of law clause in the benefits certificate does not render the arbitration agreement unenforceable by way of Alabama law.

■ The Defendants have also argued that the contracts between Woodmen and the Defendants are not in or affecting interstate commerce. This court has previously concluded that the benefits certificates issued by Woodmen fall within the analysis in *Polish National Alliance, et al. v. National Labor Relations Board*, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509 (1944), in which the Court reasoned that the fraternal benefit society, which provided death, disability, and accident benefits to its members, had engaged in a web of money-making transactions across many state lines, so that labor practices at one business could burden and disrupt commerce across state lines. *See Clayton v.* *Woodmen of World Life Ins. Soc.*, 981 F.Supp. 1447 (M.D.Ala.1997). The evidence of Woodmen's activities, including that the benefits certificates were issued in Nebraska and mailed to Alabama, indicates that it engaged in interstate commerce in its agreements with the Defendants. *See Staples v. The Money Tree*, 936 F.Supp. 856 (M.D.Ala. 1996) (holding that loan/insurance transaction between a person in Alabama and a Georgia corporation involved commerce within the meaning of the FAA based on activities relevant to the contract which occurred in Georgia and Alabama); *see also Hart v. Orion Ins. Co.*, 453 F.2d 1358 (10th Cir.1971) (FAA applies to an insurance contract); *Palozie v. State Farm Mutual Automobile Ins. Co.*, No. 96–0021–PHX–ROS, 1996 WL 814533 (D.Ariz. Dec.2, 1996) ("Insurance policies clearly involve interstate commerce and are subject to the [Federal Arbitration] Act").[3] Therefore, the court concludes that the contracts at issue in this case are contracts which evidence transactions in interstate commerce.

■ The Defendants also argue that an arbitration clause within an insurance contract cannot be enforced because the McCarran–Ferguson Act prohibits federal control of state laws which regulate the business of insurance. *See* 15 U.S.C. § 1012(b). The Defendants cite to precedent from other jurisdictions in which McCarran–Ferguson was applied to arbitration provisions contained in state insurance codes.

Although the Alabama Supreme Court apparently has not interpreted its anti-arbitration provision within the context of a McCarran–Ferguson argument, one dissenting Justice has examined Alabama law in that context. In *Ryan Warranty Services, Inc. v. Welch*, 694 So.2d 1271 (Ala.1997), Justice Maddox filed a dissenting opinion, in which Chief Justice Hooper concurred, in which he stated that the majority had not addressed the issue, but he felt it was important to state that he interprets Alabama's anti-arbitration provision as not falling within the prohibition of McCarran–Ferguson.

---

**3.** Although the benefits certificates at issue in this case are not technically insurance policies, these cases apply by analogy because the certificates share characteristics with insurance policies that are relevant to the question of whether they are in interstate commerce.

*Ryan Warranty Services, Inc.,* 694 So.2d at 1274 (Maddox, J., dissenting). In his opinion, Justice Maddox discussed the precedent cited to this court by the Defendants in this case, and reasoned that in those cases, the laws at issue specifically addressed insurance contracts. *See id.* Justice Maddox explained that his reading of Alabama Code § 8–1–41(3) is that it is a general statute which states that agreements to arbitrate cannot be specifically enforced, but is not specifically directed to the insurance industry. *Id.* He concluded that McCarran–Ferguson does not apply. *Id.*

This court has also expressed an opinion consistent with Justice Maddox's reasoning. *See Clayton v. Woodmen of the World,* 981 F.Supp. 1447 (M.D.Ala.1997). This court again concludes that because Alabama's statute which states that agreements to arbitrate are unenforceable is a general statute not found in the insurance code, but instead found in Alabama's general contract law and directed at entities other than insurance companies, it is not a statute which regulates insurance within the meaning of McCarran–Ferguson. *See Hart v. Orion Insurance Co.,* 453 F.2d 1358, 1360 (10th Cir.1971) (statutes do not regulate the business of insurance if they are laws of general application pertaining to the method of handling contract disputes); *Hamilton Life Ins. Co. of New York v. Republic National Life Ins. Co.,* 408 F.2d 606 (2nd Cir.1969) (statutes regulating the method of handling contract disputes are not statutes regulating the business of insurance).

■ The Defendants have also cited to a separate provision of the Alabama Code, § 27–14–22,[4] which governs the applicability of general law to the insurance code. Two arguments appear to be made based on this statute. The Defendants appear to argue first that this statute shows that the anti-arbitration provision was intended to apply to contracts for insurance. Another district

court analyzing an incorporation argument, for purposes of applying McCarran–Ferguson within the context of an ERISA case, noted that the fact that the insurance code was incorporated into a statute of general application did not mean that McCarran–Ferguson applied, because, among other reasons, the law of general application applied to entities other than insurance entities. *McManus v. Travelers Health Network of Texas,* 742 F.Supp. 377 (W.D.Tex.1990).

The Defendants also argue that enforcement of arbitration clauses will violate this specific statutory provision because it says that insurance contracts are to be governed by the laws of the state. Woodmen responds that this statute is merely a conflict of law statute, and has no bearing on whether arbitration clauses may be enforced.

The court has been cited to no cases in which this limited type of incorporation statute was considered to be violated or superceded under McCarran–Ferguson by enforcement of an arbitration provision. This incorporation statute is not a provision in which the statute governing arbitration specifically exempted insurance contracts. "When the overwhelming public policy in favor of arbitration is weighted against the speculative infringement upon … insurance laws …" the balance clearly favors compelling arbitration. *Life of America Ins. Co. v. Aetna Life Ins. Co.,* 744 F.2d 409, 413 (5th Cir.1984). Furthermore, the Alabama Supreme Court has enforced arbitration agreements in insurance contracts, indicating that arbitration clauses are not unenforceable merely because they are contained in insurance contracts. *See e.g., Ex Parte Rager,* 712 So.2d 333 (Ala.1998).[5]

In addition, as Woodmen has pointed out, Woodmen is a fraternal benefit society which issues benefit certificates, not insurance policies. The portion of the Alabama Code

---

**4.** Ala.Code § 27–14–22 provides "All contracts of insurance, the application for which is taken within this state, shall be deemed to have been made within this state and subject to the laws thereof."

**5.** The Defendants have also raised the argument, based on statements made in a Congressional Subcommittee, that the legislative intent of the

FAA was for it not to apply to insurance contracts. As evidenced by *Ex Parte Rager,* courts enforce arbitration agreements in insurance contracts. Barring application of McCarran–Ferguson, the court finds that statements in a Congressional subcommittee do not undermine the conclusion of courts that arbitration agreements agreed to are enforceable, whether in insurance contracts, or other forms of contracts.

which deals with fraternal benefits societies begins by stating

> Except as provided in this chapter, societies shall be governed by this chapter and shall be exempt from all other provisions of the insurance laws of this state, not only in governmental relations with the state, but for very other purpose. No law hereafter enacted shall apply to them unless they are expressly designated therein.

Ala.Code § 27–34–4. Alabama Code § 27–34–54 lists chapters and specific provisions of the Alabama insurance law which do apply to benefit societies. None of the listed chapters or provisions include Alabama Code § 27–14–22.[6] For this additional reason, the court finds that the Defendants' arguments that enforcement of the fraternal benefits society's arbitration clause violates or supercedes § 27–14–22 is unavailing.

█ The Defendants advance the additional argument that Woodmen's change of the constitution and bylaws to include an arbitration provision violates the Defendants' right to a trial by jury. Given this court's decision that the arbitration clause is binding, based on principles of Alabama contract and statutory law which incorporate those changes into the agreements between the Defendants and Woodmen, this argument is unavailing. Federal courts have determined that arbitration is a valid and enforceable method of settling disputes. *See LeFoy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. CV 89–PT–0296–E, 1989 WL 80444 at page *3 (N.D.Ala. April 14, 1989) (rejecting argument that arbitration would violate a constitution right to trial by jury because the purpose of arbitration is to provide an alternate forum for dispute resolution).

█ The Defendants have argued finally that principles of federalism require dismissal of this action because Woodmen first filed its Petition to Compel Arbitration in the underlying state action and then withdrew the state court petition and filed its petition in federal court. The Defendants argue that the Petition should be dismissed because it amounts to forum shopping. The court finds no authority to support this argument. To the contrary, the Eleventh Circuit has expressly held that federal district courts are not to dismiss petitions for arbitration merely because a case is also pending in state court. *See TranSouth Financial Corporation v. Bell,* 149 F.3d 1292 (11th Cir.1998). Accordingly, the court finds that this argument is unavailing.

## IV. CONCLUSION

For the reasons discussed, the court concludes that the Petitions for Arbitration are due to be GRANTED. The matter is due to be stayed pending arbitration in compliance with 9 U.S.C. § 3. *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 699 (11th Cir.1992). The court also finds that the requests in the Petitions requesting a stay of the parallel state court proceedings in these cases are also due to be GRANTED. *See TranSouth Financial Corp. v. Bell,* 149 F.3d 1292, 1297 (11th Cir.1998) ("If the district court orders arbitration, a stay of the state court proceedings might be appropriate at that point because continued state proceedings could jeopardize the federal court's ability to pass on the validity of the arbitration proceeding it has ordered."). Separate Orders will be entered in accordance with this Memorandum Opinion.

---

6. Alabama Code § 27–34–54 lists
  (1) Chapter 1;
  (2) Chapter 2;
  (3) The following sections of chapter 3:
  a. Section 27–3–4; and
  b. 27–3–5;
  (4) The following sections of chapter 10:
  a. Section 27–10–1;
  b. Section 27–10–2; and
  c. Section 27–10–3;
  (5) Chapter 12;
  (6) Section 27–15–29
  (7) The following sections of chapter 27:
  a. Section 27–27–26;
  b. Section 27–27–27;
  c. Section 27–27–29; and
  d. Section 27–27–50; and
  (8) Chapter 32.