This case involves Benjamin Paul Thompson's claim that he can "stack" $300,000 in uninsured motorist coverage from one policy onto $200,000 already recovered pursuant to another policy issued by American Economy Insurance Company to Raymon's East, Inc. It also involves the right of American States Insurance Company, as the workers' compensation carrier for Thompson's employer, to be subrogated to money paid by another insurance carrier for the benefit of Thompson and his wife Sharon Thompson.
Benjamin Paul Thompson was employed by Raymon's of Columbus, Inc., in Columbus, Mississippi. He had traveled to Tuscaloosa, Alabama, at the request of Bernard Raymon, a partial owner of Raymon's of Columbus, to assist him in redecorating a Tuscaloosa store operated by Raymon's East, Inc., also partially owned by Bernard Raymon. After Thompson had completed his stay in Tuscaloosa and while he was returning home to Columbus, he had an accident. At the time of the accident, he was driving a van owned by Raymon's of Columbus and principally garaged in Mississippi. The accident occurred in Alabama, and it involved a collision between the van Thompson was driving and a vehicle driven by an uninsured motorist, Chester Waters. A third vehicle, driven by Beatrice Adkins, allegedly pulled out in front of Waters, but that third vehicle was not involved in the collision. There was a factual dispute as to whether the accident was caused by Adkins, who was insured by The Hartford Insurance Company, or by Waters. Thompson, who was permanently disabled as *Page 1352 
a result of the accident, has received workers' compensation payments from American States. Following the accident, Hartford Insurance Company paid its policy limit of $100,000 to the Thompsons, and American Economy paid its policy limit of $200,000 on the insurance policy covering the vehicles owned by Raymon's of Columbus.
The Thompsons then sued American Economy, claiming that Thompson should be entitled to stack the $300,000 under the second policy issued by American Economy onto the $200,000 already received by him. American States sought subrogation rights to the $100,000 paid to the Thompsons by Hartford. The Trial court held in favor of the Thompsons. American Economy and American States appealed. We affirm in part and reverse in part.
American Economy had issued two automobile insurance policies to Raymon's East. One policy covered two vehicles owned and principally used by the Raymon's of Columbus store and the other policy covered three vehicles owned and principally used by the Tuscaloosa store. Although both policies were issued to Raymon's East, Raymon's East contends that it was reimbursed by Raymon's of Columbus for the premium payments it made on the policy covering the vehicles owned by Raymon's of Columbus. Following the accident, American Economy paid Thompson $200,000 in uninsured motorist benefits, pursuant to the policy covering the vehicles owned by Raymon's of Columbus; however, it refused to pay $300,000, which Thompson contends he is entitled to "stack," pursuant to the second policy covering automobiles owned by Raymon's East. This case was presented to the trial judge ore tenus; the judge found that at the time of the accident Thompson was working for both Raymon's of Columbus and Raymon's East. Furthermore, he applied Mississippi law to the issue of stacking and determined that Thompson was entitled to the $300,000 under the second policy issued to Raymon's East.
As a result of the accident, Atkins's liability carrier, The Hartford, paid $64,000 ($100,000 less $36,000 in attorney fees) into an escrow account for the benefit of the Thompsons. (Sharon Thompson had claimed a loss of consortium.) American States Insurance Company, the workers' compensation carrier for Raymon's, claims the right to be reimbursed with regard to that money, pursuant to § 25-5-11(a), Ala. Code 1975, because it has been making workers' compensation payments to Thompson since the accident. The trial judge held that the money paid for the benefit of the Thompsons by The Hartford was not subject to subrogation by American States because, the judge found, the Thompsons had not been made whole as a result of the moneys that they had received. In so holding, the trial judge also determined that the proceeds from the $100,000 Hartford policy applied solely to Mrs. Thompson's claim for loss of consortium and not to the claims of Mr. Thompson.
 "The entire law of subrogation, conventional or legal, is based upon equitable principles. International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163, 165 (Ala. 1989). The equitable considerations that are the underpinnings of subrogation are (1) that the insured should not recover twice for a single injury, and (2) that the insurer should be reimbursed for payments it made that, in fairness, should be [made] by the wrongdoer. Id. In International Underwriters, we stated;
 "[N]o right of subrogation against the insured exists upon the part of the insurer where the insured's actual loss exceeds the amount recovered from both the insurer and the wrongdoer, after deducting costs and expenses. In other words, the insurer has no right as against the insured where the compensation received by the insured is less than the loss.'
"548 So.2d at 164-65."
Powell v. Blue Cross Blue Shield, 581 So.2d 772, 774
(Ala. 1990). Nevertheless, footnote 8 of Powell states:
 "We note that any reimbursement for compensation paid to an injured plaintiff under the Alabama Workmen's Compensation Act, Ala. Code 1975, § 25-5-1
et seq. (hereinafter the 'Act'), by an employer or its insurer is specifically governed by § 25-5-11(a). Our holding in this case in *Page 1353 
no way interferes with the legislatively mandated scheme provided for under the Act.
 "We also note that, pursuant to the Act, only compensation, as opposed to medical payments, is reimbursable. For an analysis of this reimbursement scheme, see Maryland Cas. Co. v. Tiffin, 537 So.2d 469 (Ala. 1988). All of the examples set forth in the present opinion are based on the premise that no compensation under the Act is involved."
Powell v. Blue Cross Blue Shield, n. 8 at 779. We find the above-quoted language in Powell dispositive of the claim of American States for reimbursement. It is undisputed that American States was the workers' compensation carrier for Raymon's. Pursuant to Powell, the payments made to Thompson in compliance with the Workers' Compensation Act are governed by §25-5-11(a), which states:
 "If the injury or death for which compensation is payable under Articles 3 or 4 of this chapter was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, whether or not the party is subject to this chapter, the employee, or his or her dependents in case of death, may proceed against the employer to recover compensation under this chapter or may agree with the employer upon the compensation payable under this chapter, and at the same time, may bring an action against the other party to recover damages for the injury or death, and the amount of the damages shall be ascertained and determined without regard to this chapter. If a party, other than the employer, is a workers' compensation insurance carrier of the employer or any person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer, or any officer, director, agent, or employee of the carrier, person, firm, association, trust, fund, or corporation, or is a labor union, or any official or representative thereof, or is a governmental agency providing occupational safety and health services, or an employee of the agency, or is an officer, director, agent, or employee of the same employer, or his or her personal representative, the injured employee, or his or her dependents in the case of death, may bring an action against any workers' compensation insurance carrier of the employer or any person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer, labor union, or the governmental agency, or person, or his or her personal representative, only for willful conduct which results in or proximately causes the injury or death. If the injured employee, or in case of death, his or her dependents, recovers damages against the other party, the amount of the damages recovered and collected shall be credited upon the liability of the employer for compensation. If the damages recovered and collected are in excess of the compensation payable under this chapter, there shall be no further liability on the employer to pay compensation on account of the injury or death. To the extent of the recovery of damages against the other party, the employer shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury or death. If the employee who recovers damages is receiving or entitled to receive compensation for permanent total disability, then the employer shall be entitled to reimbursement for the amount of compensation theretofore paid, and the employer's obligation to pay further compensation for permanent total disability shall be suspended for the number of weeks which equals the quotient of the total damage recovery, less the amount of any reimbursement for compensation already paid, divided by the amount of the weekly benefit for permanent total disability which the employee was receiving or to which the employee was entitled.
For purposes of this amendatory act, the employer shall be entitled to subrogation for medical and vocational benefits expended by the employer on behalf of the employee; however, if a judgment in an action brought pursuant to this section is uncollectible in part, the employer's entitlement to subrogation for such medical and vocational *Page 1354 
benefits shall be in proportion to the ratio the amount of the judgment collected bears to the total amount of the judgment."
Thus, American States is entitled to the funds in the escrow account to the extent of its reimbursement claim.
The trial court noted that in the event that this Court made the determination we have just made, then the entire $100,000 should be allocated to Sharon Thompson's claim for loss of consortium. In a special concurrence to Powell, Justice Jones stated:
 "Sixth, the plurality opinion correctly omits any reference to Mr. Powell's derivative claim for loss of consortium, because his claim for noneconomic loss would ripen only upon full payment to the primary plaintiff and full reimbursement to the indemnitor. The spouses' derivative claim for economic loss, however, would take priority over the insurer's derivative claim."
Powell, 581 So.2d at 783 (Jones, J., concurring). Thus, the "allocation" of the money to Sharon Thompson will not defeat American States' right to reimbursement, in light of the principle stated in that paragraph of Justice Jones's special concurrence quoted above; we now adopt that principle.
We will now consider Thompson's claim that he is entitled to stack the proceeds of the second policy issued to Raymon's East onto the $200,000 in insurance proceeds he has already received from American Economy. First, we must address Thompson's claim that Mississippi law should apply to the insurance contract in question and to his right to stack. This Court has considered conflict of laws questions in insurance settings in the past. In Cotton v. State Farm Mutual Automobile Insurance Co.,540 So.2d 1387 (Ala. 1989), we wrote:
 "Cotton was injured in an automobile accident in Huntsville, Alabama, in August 1986. The parties . . . stipulated that the other driver, Larry Bowen, was at fault. . . .
 "The two $25,000.00 policies under which Cotton is claiming benefits were issued by State Farm in Humboldt, Tennessee. Cotton is originally from Atwood, Tennessee, not far from Humboldt, and he maintained a house in Atwood from 1973 until 1987. After selling his house in 1987, he purchased a lot there. Both of Cotton's cars were registered in Tennessee; and he is a resident of that State. However, Cotton has been employed at Redstone Arsenal in Huntsville, Alabama, since 1958, and he resides in a mobile home in Huntsville from Sunday through Friday of each week. He generally returns to Tennessee on the weekends.
 ". . . Cotton contends that because his automobile was principally garaged in Alabama, Alabama law should be applied in determining the amount of his uninsured/underinsured benefits. . ..
 "In considering which state's law should apply to the facts before us, we note that the insurance contract was formed in Tennessee between a company doing business there and a Tennessee resident. In Davis v. Hartford Ins. Co., 456 So.2d 302, 304
(Ala. 1984), this Court held that Illinois law should apply with regard to an insurance contract where the contract 'was made within the State of Illinois between an Illinois company and an Illinois resident.' We cited American Interstate Ins. Co. of Georgia v. Holliday, 376 So.2d 701
(Ala. 1979), and State Farm Mutual Automobile Ins. Co. v. Bradley, 293 Ala. 695, 309 So.2d 826 (1975), as reaching the same conclusion with regard to contracts formed in Georgia and South Carolina, respectively.
". . . .
 "It is conceded that Cotton's automobile was principally garaged in Alabama. The question, therefore, is whether his policy was 'delivered or issued for delivery' in this State. The fact is that the policy was issued in Tennessee and the premium notices were always mailed to Cotton's Atwood, Tennessee, address. The fact that Cotton mailed his premium checks from Madison, Alabama, is of little consequence. . . . We simply cannot say, under the facts before us, that the trial judge erred in his determination that the contract was not 'delivered or issued for delivery' in Alabama." *Page 1355 
540 So.2d 1387, 1387-88. See also Ailey v. Nationwide MutualInsurance Co., 570 So.2d 598, 599 (Ala. 1990). Section 27-14-22,Code of Alabama (1975), provides:
 "All contracts of insurance, the application for which is taken within this state, shall be deemed to have been made within this state and subject to the laws thereof."
Both policies in this case were issued by Prichett Moore in Tuscaloosa to Raymon's East, located in Tuscaloosa. The application for the policy at issue was taken in Alabama, and the policy was delivered, or issued for delivery, in this state; we conclude that it should be interpreted according to the uninsured motorist insurance laws of the state of Alabama. The policy was issued to an Alabama corporation by an Alabama insurance company, and all premium notices were mailed to Raymon's East in Tuscaloosa. Thus, Alabama law applies.
Having resolved that issue, we consider whether stacking would be allowed under Alabama law. Section II of the insurance policy defines "WHO IS AN INSURED":
"a. You for any covered 'auto'.
 "b. Anyone else while using with your permission a covered 'auto' you own, hire, or borrow. . . .
 "c. Anyone else who . . . is liable for the conduct of an 'insured' but only to the extent of that liability."
Clearly, Thompson does not fall within part a. or part c.; however, we must consider whether Thompson falls within the language of part b. Part b. states that coverage exists for "[a]nyone else while using with your permission a covered 'auto' you own, hire, or borrow." The trial judge found, and the evidence supports the finding, that Thompson was an employee of both Raymon's East and Raymon's of Columbus at the time of the accident. Although he was driving a vehicle owned by Raymon's of Columbus, the purpose of his trip to Tuscaloosa was to help remodel the Raymon's East store. Furthermore, Thompson's use of the van in Tuscaloosa was in conjunction with his work at the Raymon's East store. American Economy citesSchroeder v. Board of Supervisors of Louisiana StateUniversity, 591 So.2d 342, 346 (La. 1991), for the proposition that, under the circumstances of this case, the vehicle could not be classified as having been "borrowed" by Raymon's East. We disagree. Schroeder states:
 "The majority of other courts that have interpreted similar borrowed automobile provisions have also concluded that the term borrow connotes much more than merely receiving some benefit from another's use of a third person's vehicle. They have determined that borrowing a car requires possession reflecting dominion and control over the vehicle."
Schroeder, supra, at 347. (Citations omitted.) Under the facts of this case, Thompson, as an employee of Raymon's East, had dominion and control over the van in which the accident occurred. It simply cannot be said that Raymon's East did not have control over the vehicle at the time of the accident when, in fact, Thompson, as an employee of Raymon's East was in Tuscaloosa on business for Raymon's East and his use of the vehicle in Tuscaloosa was for that purpose.
This present case differs from United States Fidelity Guaranty Co. v. Perry, 361 So.2d 594 (Ala.Civ.App. 1978), in that the insurance policy in Perry had the following definition excluding coverage:
 " ' "Hired automobile" means an automobile not owned by the named insured which is used under contract in behalf of or loaned to, the named insured, provided such automobile is not owned by or registered in the name of (a) a partner or executive officer of the named insured or (b) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile.' "
361 So.2d at 596. In Perry, the automobile was owned by an employee, Jerry Ivey, and was being driven by him at the time of the accident. The accident killed two coemployee passengers, Kenneth Perry and Roy David Gulley. The Court of Civil Appeals held that the automobile did not fall within the policy definitions for coverage:
 "It is essential to plaintiffs' contention that the Ivey vehicle meet the policy definition *Page 1356 
of a hired automobile. We find it does not do so in at least two aspects. The evidence does not show either a contract for use in behalf of or a loan of the Ivey vehicle to or in behalf of the named insured. The use of his automobile by the employee Ivey in furtherance of his employer's interest, even with actual or implied permission, does not of itself show a loan to the employer."
Perry, 361 So.2d at 597 (citations omitted). Based on the foregoing discussion, we conclude that Thompson is covered under the insurance policy.
Now we must determine whether, under Alabama law, Thompson is entitled to stack the coverage under this insurance policy onto the coverage of the other insurance policy from which he has already collected. This Court, in State Farm Mutual AutomobileInsurance Co. v. Fox, 541 So.2d 1070, (Ala. 1989), stated:
 "This Court has long recognized that where the loss exceeds the limits of one uninsured motorist policy, the insured may stack other uninsured motorist policies to cover up to the actual damages sustained. General Mutual Insurance Co. v. Gilmore, 319 So.2d 675 (Ala. 1975); Great Central Insurance Co. v. Edge, 292 Ala. 613, 298 So.2d 607
(1974); State Farm Mutual Automobile Insurance Co. v. Cahoon, 287 Ala. 462, 252 So.2d 619 (1971); Employer's Liability Assurance Corp. v. Jackson, 289 Ala. 673, 270 So.2d 806 (1972); Hogan v. Allstate Insurance Co., 287 Ala. 696, 255 So.2d 35
(1971); Safeco Insurance Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 (1970).
 "In 1984, the Legislature amended Alabama Code 1975, § 32-7-23, by adding the following as paragraph (c):
 " 'The recovery by an injured person under the uninsured provisions of any one contract, of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract.' [Emphasis added in Fox.]
 "When statutory language is unequivocal and unambiguous, the language is to be given its plain, clear, and ordinary meaning. Mann v. City of Tallassee, 510 So.2d 222 (Ala. 1987); Clark v. Houston County Comm'n, 507 So.2d 902 (Ala. 1987); East Montgomery Water, Sewer Fire Protection Auth. v. Water Works Sanitary Sewer Board, 474 So.2d 1088 (Ala. 1985). The phrases 'any one contract' and 'within such contract' refer to a single insurance contract. There may be no significant difference between five single-vehicle insurance policies and one insurance policy covering five vehicles, as State Farm contends. However, the Legislature clearly directed its limitation of stacking of uninsured/underinsured motorist coverage to a single policy covering multiple vehicles."
541 So.2d at 1072. On the authority of Fox, Thompson is entitled to stack.
AFFIRMED IN PART AND REVERSED IN PART.
HORNSBY, C.J., and MADDOX, SHORES, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs in part and concurs in the result in part.